<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEVIN T. SMITH,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**METROPOLITAN LIFE INSURANCE COMPANY,**<br><br>      **Defendant.** | **Civil Action No. 14-2288 (ES) (MAH)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

**I.     Introduction**

      This action arises from overpayment of benefits made to Plaintiff Kevin T. Smith ("Plaintiff" or "Smith") in connection with his long term disability claim. Smith asserts that the claim administrator—Defendant Metropolitan Life Insurance Company ("MetLife")—erroneously recovered overpayments made to him, in breach of a purported settlement reached by the parties. (*See* D.E. No. 1, Complaint ("Compl.")). Pending before the Court is MetLife's motion for summary judgment. (D.E. No. 9). The Court has considered the submissions accompanying the instant motion and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's Complaint is dismissed in its entirety.

## II.	Background[1]

### A.	Applicable Plan Provisions

Smith was a participant in the Public Service Electric & Gas Company long-term disability plan (the "Plan"). (SMF ¶ 1). The long-term disability ("LTD") benefits provided by the Plan are funded by a group policy of insurance issued by MetLife. (*Id.*). MetLife is the claim administrator with discretionary authority to determine eligibility for LTD benefits and to interpret the terms of the Plan. (*Id.*).

The Plan provides a monthly LTD benefit to eligible employees, reduced by benefits received from other sources, including Social Security Disability Insurance. (*Id.* ¶ 2). The Plan authorizes MetLife and/or the Plan to recoup overpayments of LTD benefits by reducing future LTD benefits payable under the terms of the Plan until the overpayment is recovered. (*Id.*). In particular, the Plan provides as follows:

> Your Monthly Benefit is reduced by Other Income Benefits shown below.
>
> \*   \*   \*
>
> **List of Sources of Other Income Benefits**
>
> 1.	**Federal Social Security Act, Railroad Retirement Act, Canada Pension Plan, or any provincial or disability plan, or the Canada Old Age Security Act**
>
> Benefits that you receive because of your disability or your retirement as a direct result of your disability, to the extent such benefits are

---

[1] These background facts are taken in part from the parties' Rule 56.1 statements. (D.E. No. 9-3, Rule 56.1 Statement of Uncontested Material Facts on Behalf of Metropolitan Life Insurance Company ("Def. SMF"); D.E. No. 10 at 1–7, Rule 56.1 Response to Defendant's Statement of Uncontested Material Facts and Counterstatement of Material Facts by Kevin T. Smith ("Pl. SMF" at 1–4; "Pl. CSMF" at 4–7); D.E. No. 13-1, Metropolitan Life Insurance Company's Response to the Counterstatement of Material Facts Pursuant to Rule 56.1 on Behalf of Kevin T. Smith ("Def. CSMF") (Def. SMF and Pl. SMF collectively referred to as "SMF"; Pl. CSMF and Def. CSMF collectively referred to as "CSMF")). However, the Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of fact." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, No. 03-2854, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L.Civ.R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

2

> payable for the period for which benefits are payable for Disability under This Plan, will be counted.
>
> \* \* \*
>
> If we do not reduce your Monthly Benefit by an estimate of any such benefits as shown above, you must repay us any amount received at the time such benefits are granted.  Such amount received is the amount owed to you by such benefit plan prior to the date your benefits were determined by such plan.  Also, such amount will include interest to the extent that such plan pays interest on amounts it owes.  *If you do not repay us such amounts, we may reduce your monthly Benefit until, and to the extent of, recovery of these amounts.*
>
> \* \* \*
>
> **Right to Recover Overpayments**
>
> *We have the right to recover from you any amount that we determine to be an Overpayment.  You have the obligation to refund to us any such amount.*  Our rights and your obligations in this regard are also set forth in the reimbursement agreement you are required to sign when you become eligible for benefits under This Plan.  This reimbursement agreement will not apply with respect to any benefits received under any Federal benefit programs.  *This agreement: (i) confirms that you will repay all Overpayments; and (ii) authorizes us to obtain any information relating to Other Income Benefits.*
>
> An Overpayment occurs when we determine that the total amount paid by us on your claim is more than the total of the benefits due under This Plan.  This includes any Overpayments resulting from:
>
> **1.**   retroactive awards received from sources shown in the List of Other Income Benefits;
>
> **2.**   fraud; or
>
> **3.**   any error we make in processing your claim.
>
> The Overpayment equals the amount we paid in excess of the amount we should have paid under This Plan.  In the case of a recovery from a source other than This Plan, our Overpayment recovery will not be more than the amount of the recovery.
>
> You have the right to appeal any Overpayment recovery.

(D.E. No. 9-5 at ML0001–ML0034 (the "Plan"), at ML0014–ML0015, ML0024) (emphasis added).

Additionally, the Plan requires proof of disability and sets forth a three year limitations period for legal actions:

> **Proof of Disability**
>
> Provide proof of Disability within 3 months after the end of your Elimination Period.[2]
>
> \*    \*    \*
>
> **Legal Actions**
>
> No legal action of any kind may be filed against us:
>
> **1.**   within the 60 days after proof of Disability has been given; or
>
> **2.**   *more than three years after poof of Disability must be filed.*  This will not apply if the law in the area where you live allows a longer period of time to file proof of Disability.

(D.E. No. 9-5 at ML0022, ML0024) (emphasis added).

Furthermore, the Plan confers discretionary authority upon MetLife to determine eligibility for benefits and to interpret the terms of the Plan:

> *MetLife in its discretion has authority to interpret the terms, conditions and provisions of the entire contract.*  This includes the Group Policy, Certificate and any Amendments.
>
> \*    \*    \*
>
> **Discretionary Authority of Plan Administrator
> And Other Plan Fiduciaries**
>
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan*.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.*

---

[2] "Your Elimination Period [is 180 days of continuous Disability and] begins on the day you become Disabled."  (D.E. No. 9-5 at ML0007, ML0011).

4

(D.E. No. 9-5 at ML0003, ML0031) (emphasis added).

### B. Smith's Claim for LTD Benefits

Smith submitted a claim for LTD benefits stating he was disabled as of March 29, 2002. (SMF ¶ 11). As part of his claim for LTD benefits, Smith submitted an Agreement to Reimburse Overpayment of Long Term Disability Benefits representing, agreeing, and acknowledging as follows:

**Agreement To Reimburse Overpayment of Long Term Disability Benefits**

I, Kevin T. Smith acknowledge that if my disability claim is or has been approved, under my Long Term Disability coverage, Metropolitan Life Insurance Company (MetLife) is authorized to reduce the benefits otherwise payable to me by certain amounts paid or payable to me under disability or retirement provisions of the Social Security Act . . . .

I understand that if my disability claim is or has been approved, MetLife is willing to make advance monthly disability payments to me, which because of amounts paid or payable under the laws described above may be in excess of the benefits actually due to me. However, I also understand and accept that MetLife will make these payments, only if I make certain statements which I represent and warrant to be true and only if I agree as follows:

\* \* \*

5. After MetLife has recalculated my monthly benefit payment and has determined the amount of the overpayment as specified in my Plan of Benefits, I agree to repay to MetLife any and all such amounts which MetLife or employer has advanced to me in reliance upon this Agreement.

6. If for any reason MetLife or employer is not repaid, then I understand that MetLife may reduce my monthly benefit below the minimum monthly benefit amount as stated in my Plan of Benefits, until the overpayment is reimbursed in full.

7. I agree to repay MetLife in a single lump sum any overpayment on my Long Term Disability claim due to integration of retroactive Social Security Benefits.

I understand that when MetLife issues an advance, it is relying on my statements and agreements herein. My acceptance of an advance, along with my signature below, is my acceptance of terms of this Agreement.

(D.E. Nos. 9-5 through 9-12 at ML0035–ML0790 ("Smith Admin. R.") at ML0765).

Smith filed an application for Social Security Disability (SSDI) benefits, which was initially denied in October 2003. (SMF ¶ 12). During that time, MetLife continued to pay Smith LTD benefits. (*Id.*). Smith appealed the claim determination on or around July 27, 2005, and his appeal was also denied. (*Id.*). However, in March 2007, MetLife was provided with notice that Smith was awarded SSDI benefits. (*Id.*). Thereafter, MetLife received correspondence and a Social Security Notice of Award dated April 9, 2007, stating that Smith would be paid a lump sum payment by the Social Security Administration of $65,034.50, and his initial monthly SSDI benefit was $1,706.90. (*Id.*).

By correspondence dated May 7, 2007, MetLife advised Smith that although he had actually received $159,249.62 in LTD benefits, the amount properly payable under the Plan was only $75,769.35 due to the reduction of benefits caused by the receipt of SSDI benefits. (*Id.* ¶ 13). Consequently, MetLife advised Smith that he had received an overpayment of $83,480.27, and that he owed that amount to MetLife. (*Id.*). MetLife further advised that any attorneys' fees incurred with respect to the SSDI award could be used to offset the overpayment. (*Id.*).

On July 25, 2007, Smith called MetLife and proposed to settle the overpayment claim by foregoing all future LTD benefits in exchange for MetLife permitting him to keep the overpayment. (*Id.* ¶ 14). MetLife advised Smith that if he sent a partial lump sum of $38,000, MetLife would consider his offer. (*Id.*).

By correspondence dated July 31, 2007, Smith's attorney advised MetLife that Smith had received a check from the Social Security Administration in the amount of $78,170.27 representing retroactive SSDI benefits. (*Id.* ¶ 15). Counsel advised that if Smith was "permitted to retain the Social Security retro check, then he would be willing to terminate his policy benefits with MetLife. Simply put, [Smith] will retain the $78,170.27 and relieve MetLife from paying any other future

benefits that would total $85,885.15." (*Id.*). On August 3, 2007, MetLife advised counsel for Smith that MetLife was not interested in terminating Smith's LTD claim in exchange for forgiving the overpayment. (*Id.* ¶ 16).

Thereafter, by correspondence dated August 6, 2007, MetLife was provided with a copy of Smith's dependent's SSDI Notice of Award, evidencing that his daughter was eligible for an initial benefit of $853.40, and that she would receive a retroactive lump sum payment of $44,948.00. (*Id.* ¶ 17). By correspondence dated August 15, 2007, MetLife advised Smith that the dependent SSDI benefits increased the amount of the LTD overpayment owed by Smith to MetLife to $123,134.14, and requested that Smith "send a personal check or money order in the amount of $102,721.14 made payable to Metropolitan Life Insurance Company." (*Id.* ¶ 18). MetLife claims that the August 15, 2007 letter was "in error" as the Plan does not contain an offset for benefits received by family members as a result of a participant's disability. (Def. CSMF ¶ 7).

Nevertheless, by correspondence dated November 5, 2007, MetLife advised Smith that "an overpayment in the amount of $21,114.71 is still owed [by Smith to] MetLife for benefits paid in advance." (SMF ¶ 19). And by correspondence dated December 11, 2007, MetLife, through Cindy Perry, advised Smith that the "outstanding overpayment balance" equaled $21,114.71. (CSMF ¶ 9). In other words, with respect to overpayment owed by Smith to MetLife, the 2007 correspondence dated November 5th and December 11th listed an amount significantly less than the amount listed in the correspondence dated August 15th, June 28th, and May 7th.

By correspondence dated March 10, 2008, Smith's counsel wrote to Deepak Wabhawa at MetLife and confirmed a March 4, 2008 telephone conversation. (SMF ¶ 19; CSMF ¶ 10). The March 10th, 2008 correspondence stated as follows:

> It was during [the March 4, 2008] telephone conversation that you confirmed for me, notwithstanding prior correspondence, that the outstanding overpayment balance

> due back to MetLife is $21,114.71. Therefore, I enclose my Attorney Trust Account Check in the amount of $21,114.71 in full and final satisfaction of this overpayment claim. I understand that the amount enclosed represents the full amount of the overpayment claim, without compromise.
>
> I would ask that you accept this correspondence as confirmation that upon your receipt of this check that MetLife will not seek any further alleged overpayments from Mr. Smith as with this payment, any and all overpayment balance is fully satisfied. If MetLife does not agree, then please do not negotiate the enclosed check. Instead, please return it to my office with an explanation as to why your confirmation of the overpayment balance was incorrect.
>
> With this payment, I will assume that any and all issues regarding an alleged overpayment are now resolved and I will document my file accordingly. Once again, unless MetLife is in agreement that the enclosed payment represents full and final satisfaction of any alleged over payment, then please do not negotiate the check. If, on the other hand, and as per our March 4th conversation, you are satisfied that this amount represents the full nature and extent of any alleged overpayment, then please negotiate the enclosed check and document your file accordingly.
>
> I appreciate your courtesies in addressing this matter with me.
>
> Very truly yours,
> MARK A. RINALDI

(*Id.*). MetLife thereafter cashed and retained the March 10, 2008 Trust Account check in the amount of $21,114.71, and advised Smith that the overpayment was satisfied. (SMF ¶ 20; CSMF ¶ 10).

Notwithstanding the above, by correspondence dated September 15, 2008, MetLife advised Smith that the total amount overpaid was $59,329.55 and that the remaining overpayment amount due MetLife was $32,914.84. (SMF ¶ 20). MetLife provided a breakdown of the calculation, which included the reduction of the overpayment by the $21,114.71 lump sum payment Smith previously paid and a credit of $5,300.00 for the attorney fees incurred with respect to Smith's claim for SSDI benefits. (*Id.*). Smith was explicitly advised that he was entitled to a monthly LTD benefit of $1,548.42, which would be withheld until the overpayment was reimbursed. (*Id.*).

Smith was further advised that he could send a lump sum payment representing the amount of the LTD overpayment and his LTD benefits would be reinstated.  (*Id.*).

By correspondence dated September 22, 2008, Smith, through counsel, asserted that the overpayment had been resolved based upon Smith's previous payment of $21,114.71.  (*Id.* ¶ 21).  However, by correspondence dated December 4, 2008, MetLife advised Smith that the remaining LTD overpayment was $29,818.00, and requested that he send a money order to MetLife.  (*Id.*).  Smith did not send a money order, which resulted in MetLife continuing to offset the overpayment from the LTD benefits payable to Smith.  (*Id.*).

By correspondence dated August 10, 2010, MetLife advised Smith that the overpayment was repaid as of July 20, 2010, and Smith thereafter received his monthly LTD benefit of $1,548.42.  (*Id.*).   In accordance with the terms of the Plan, Smith's LTD benefits ended as of December 16, 2012, when he turned sixty-five years old.  (*Id.* ¶ 22).

Although the parties agree that "Smith has received all LTD benefits he was entitled to receive under the terms of the Plan," (*id.*), Smith claims that "not withstanding [sic] its varying demands, MetLife withheld an additional amount of $57,258.24 ($1,k547.52 [sic] per month for 37 months)." (Pl. CSMF ¶ 12).  MetLife counters that the "differing amounts of the overpayment, as set forth in the letters were highlighted on behalf of Smith, were the result of adjustments in the overpayment caused by Smith's receipt of SSDI benefits and LTD benefits for different periods of time and the letters being written at differing times."  (Def. CSMF ¶ 12).

### C.  Procedural History

On April 10, 2014, Smith filed a single count complaint alleging that "Defendant is in breach of its agreement to provide long term disability benefits in connection with the plaintiff's condition and is in breach of their Contract between the defendant and the plaintiff and the

defendant's employer, Public Service Electric and Gas." (*See* Compl. ¶ 15). Smith also alleges that MetLife is "in breach of their responsibility in carrying out the terms and conditions of said policy and are negligently, willfully, arbitrarily and capriciously denying plaintiff's long term disability benefits." (*Id.* ¶ 16). The Court has jurisdiction under The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(e) & (f), and 28 U.S.C. § 1332.

MetLife filed the instant motion for summary judgment on December 12, 2014, arguing that Smith's claim is time-barred and contending that there is no evidence showing that MetLife's actions with respect to recoupment of overpayments were "arbitrary and capricious." (*See* D.E. No. 9-1, Legal Memorandum in Support of Metropolitan Life Insurance Company's Motion for Summary Judgment ("Def. Mov. Br.") at 9–17). Smith filed opposition on January 13, 2015, claiming that an independent settlement agreement—evidenced by the March 10, 2008 correspondence—provides a sufficient basis for the Complaint. (*See* D.E. No. 10, Memorandum of Law – Peremptory Statement ("Pl. Opp. Br.")[3] at 8–13). MetLife replied on February 9, 2015, primarily contending that ERISA preempts any purported state-law contract claim. (*See* D.E. No. 13, Legal Memorandum in Reply ("Def. Reply Br.") at 5). The motion is now ripe for adjudication.

**III.   Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and if, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to a judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when a reasonable finder of fact could return

---

[3] The Court refers to the page numbers on the document itself when citing to Plaintiff's brief. For example, the Court cites to page 8 of D.E. No. 10 when citing to the first page of the brief.

a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012).

The moving party must first show that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. If the movant meets this burden, the burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. Although the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party, *see Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995), the non-moving party must offer specific facts that establish a genuine issue of material fact—not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings, or unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Celotex,* 477 U.S. at 324; *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003).

**IV.     Discussion**

MetLife primarily argues that Smith's claim is time-barred under the three-year statute of limitations set forth in the Plan. (Def. Mov. Br. at 10–17; Def. Reply Br. at 2–5). Smith argues that "the alleged breach of the March 10, 2008 correspondence, which forms the basis for the settlement of the overpayment, is a contract upon which a legal action to enforce the contract may be sustained" and claims that a six-year statute of limitations applies. (Pl. Opp. Br. at 11). The Court concludes that MetLife is entitled to summary judgment because the three-year period of limitations applies due to ERISA's "extraordinary pre-emptive power." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) (quotation omitted).

11

ERISA does not specify a statute of limitations for a breach of contract claim, so as a starting point, the Court must "borrow" the state statute of limitations most analogous to his claim. *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 305-06 (3d Cir. 2008). The statute of limitations for a breach of contract claim in New Jersey is six years. N.J. Stat. Ann. § 2A:14-1. However, parties may contract for a shorter limitations period than set forth in the relevant statute, so long as the shorter period is not manifestly unreasonable. *See Klimowicz v. Unum Life Ins. Co. of Am.*, 296 F. App'x 248, 250 (3d Cir. 2008).

The law is clear that shortened periods of limitations in ERISA employee benefit plans should be enforced. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 611–12 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan."). Indeed, in *Klimowicz* the Third Circuit explicitly found that a three-year statute of limitations contained within an ERISA Plan superseded the six-year statute of limitations for a breach of contract claim under New Jersey law. *Klimowicz*, 296 F. App'x at 250–51; *cf. Rumpf v. Metro. Life Ins. Co.*, No. 09-557, 2010 WL 2902543, at *6 (E.D. Pa. July 23, 2010) (similar contractual limitations period not enforced where record showed that plaintiff had not received the relevant documents and was thus unaware of the shortened period).

Here, the Plan sets forth a three year limitations period for legal actions:

No legal action of any kind may be filed against us:

**1.** within the 60 days after proof of Disability has been given; or

**2.** *more than three years after poof of Disability must be filed.* This will not apply if the law in the area where you live allows a longer period of time to file proof of Disability.

(D.E. No. 9-5 at ML0022, ML0024) (emphasis added). A contracted-for three-year period of limitations is not manifestly unreasonable. *See Klimowicz*, 296 F. App'x at 250–51.

12

Thus, the key issue before the Court is whether the three-year period of limitations applies to Smith's breach of contract claim. Unlike the plaintiff in *Rumpf*, Smith does not contend that he was unaware of the shortened period of limitations. Instead, he argues that the March 10, 2008 correspondence created a separate contract, independent from the Plan, and that the six-year limitations period for breach of contract actions set forth in N.J. Stat. Ann. § 2A:14-1 applies. (Pl. Opp. Br. at 11–12). MetLife argues that any such breach of contract claim is preempted. (Def. Reply Br. at 5–8).

The Court agrees with Defendant that ERISA preempts Smith's purported breach of contract claim and that the three-year limitations period controls. Section 514(a) of ERISA provides that it "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "[T]he phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). The Third Circuit has held that a state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (citing *Ingersoll–Rand Corp. v. McClendon*, 498 U.S. 133 (1990)). Thus, where it is the case that "if there were no plan, there would have been no cause of action," ERISA should preempt a state cause of action. *Id.*; *see also Ford v. Unum Life Ins. Co. of Am.*, 351 F. App'x 703, 706 (3d Cir. 2009) ("State law claims such as . . . breach of contract [and] negligence . . . would ordinarily fall within the scope of ERISA preemption, if the claims relate to an ERISA-governed benefits plan"). Furthermore, in addition to the express preemption provision of § 514(a), a claim is conflict preempted by § 502 when it

13

"duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014) (citation omitted).

Here, Plaintiff's claim arising out of the purported March 10, 2008 contract/settlement agreement is preempted. First, the claim "relates to" the Plan because if there were no plan, there would be no cause of action. *See Nobers*, 968 F.2d at 406 (citation omitted). The crux of Smith's claim is whether overpayments pursuant to the Plan were rightfully deducted from his benefits in light of the March 10, 2008 correspondence. Determining whether such deductions were appropriate would require the Court to review the elements of the Plan. Smith does not dispute this. The Court is thus satisfied that Smith's claim relates to the Plan. Second, Smith's claim is conflict preempted because it seeks to supplant the terms of the Plan. *See Menkes*, 762 F.3d at 294. Smith asks this Court to disregard the terms of the Plan and focus exclusively on the March 10, 2008 correspondence under New Jersey contract law. But § 502 bars any claim that "provides a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA." *Barber v. UNUM Life Ins. Co. of Am.*, 383 F.3d 134, 140 (3d Cir. 2004) (quotation marks omitted). Additionally, Smith does not cite a single case to support his contention that a purported settlement agreement relating to overpayments under an ERISA entitles a plaintiff to relief independent of ERISA. (*See generally* Pl. Opp. Br.). Therefore, the Court finds that to the extent Smith's Complaint is premised on characterizing the March 10, 2008 correspondence as a contract/settlement agreement, such a claim is preempted by ERISA.

The Court also notes that § 402(a)(1) of ERISA "precludes oral or informal amendments to employee benefit plans." *Confer v. Custom Eng'g Co.*, 952 F.2d 41, 43 (3d Cir. 1991) (citations omitted). "Only a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan." *Id.* There is no evidence that indicates—and

14

Smith does not suggest—that the March 10, 2008 correspondence qualifies as a formal written amendment executed in accordance with the Plan's own procedure for amendment. The Court is therefore further convinced that the terms of the Plan—and not the March 10, 2008 correspondence—governs Plaintiff's claim. Thus, the Court is satisfied that a three-year statute of limitations applies to Smith's claim.

The Court must now determine when the three-year statute of limitations began to run. The Third Circuit has adopted the "clear repudiation" rule to govern when a cause of action accrues under an ERISA plan, "whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (citation omitted). "[T]he clear repudiation rule does not require a formal denial to trigger the statute of limitations. To the contrary, the rule includes other forms of repudiation when a beneficiary knows or should know he has a cause of action." *Id.* at 521. Significantly, "an underpayment [of benefits] can qualify as a repudiation because a plan's determination that a beneficiary receive less than his full entitlement is effectively a partial denial of benefits. Like a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan." *Id.* Thus, the Third Circuit found that a "cause of action to adjust benefits accrue[s] upon [plaintiff's] initial receipt of the erroneously calculated award." *Id.* at 522.

MetLife argues that Smith's cause of action accrued on May 7, 2007, when MetLife advised Smith that he was overpaid LTD benefits and that he owed $83,480.27 to MetLife. (Def. Mov. Br. at 12; *see* SMF ¶ 13). Smith argues that, read literally, the limitations period in the Plan would bar Smith's action as of "March 29, 2005, three years prior to the breach of the settlement agreement which forms the basis of the instant litigation," and instead suggests that "MetLife continually, and up to July of 2010, breached its settlement agreement, therefore, contract with

15

Smith." (Pl. Opp. Br. at 11). In other words, Smith does not argue that the three-year limitations period in and of itself is invalid as a matter of law, but suggests that the accrual date is nonsensical for a claim such as his.

The Court need not determine the precise date of accrual because Smith's claim is clearly time-barred even under the generous accrual date he suggests. Applying the three-year statute of limitations to Smith's suggested accrual date of July 2010, Smith's claim became time-barred by the end of July 2013. However, Smith did not initiate this action until April 10, 2014, over eight months after the three-year statute of limitations had expired. (D.E. No. 1). Thus, the Court grants summary judgment to MetLife because Smith's claim is time-barred.

## V. Conclusion

For these reasons, the Court GRANTS MetLife's motion for summary judgment. An accompanying Order follows this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**